UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CARLOS GARNETT WIGGINS,

                Plaintiff,

v.

**DECISION AND ORDER**
**17-CV-1073**

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

# INTRODUCTION

Plaintiff Carlos Wiggins brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of Acting Commissioner of Social Security (the "Commissioner"), which denied his application for supplemental security income ("SSI") under Title II of the Act.[1] Dkt. No. 1. This Court has jurisdiction over this action under 42 U.S.C. § 405 (g).

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12 (c). Dkt. Nos. 10, 13. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

# BACKGROUND

On March 29, 2013, the plaintiff protectively filed an application for SSI with the Social Security Administration ("SSA") alleging disability since July 15, 2012

---

[1] Plaintiff also applied for Disability Insurance Benefits (DIB), but that claim was denied by the SSA because he was not insured for DIB. Tr. 141-42, 88-91, 152.

1

due to inability to walk steadily, sharp pains in foot, no feeling on bottom of foot, major nerve damage in leg, and depression/mental health.  Tr.[2] 147-151, 163.  On September 5, 2013, the plaintiff's claim was denied by the SSA at the initial level.  Tr. 78-87.  On September 25 2015, the plaintiff, represented by counsel, appeared and testified along with a vocational expert ("VE") before Administrative Law Judge Sharon Seeley ("the ALJ").  Tr. 36-77.  On April 5, 2016, the ALJ issued a decision finding the plaintiff was not disabled within the meaning of the Act.  Tr. 18-35.  Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on August 28, 2017.  Tr. 1-3.  Thereafter, the plaintiff commenced this action seeking review of the Commissioner's final decision.  Dkt. No. 1.

**LEGAL STANDARD**

I. **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether

---

[2] References to "Tr." are to the administrative record in this matter.

[the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II.  Disability Determination

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental

3

work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed the plaintiff's claim for benefits under the process described above. At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since March 29, 2013. Tr. 23. At step two, the ALJ found that the plaintiff has the following severe impairments: sensory impairment of the right lower extremity, status post fracture of the right femur with retained hardware and popliteal artery bypass. *Id.* Here, the ALJ also found the plaintiff's mild disc bulge at L4-5 and minimal disc bulge at L5-S1 with no nerve root compression are non-severe impairments. *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any listings impairment. Tr. 24.

Next, the ALJ determined that the plaintiff retained the RFC to perform a less than full range of light work.[3]  Tr. 24.  Specifically, "the claimant can lift and carry twenty pounds occasionally and ten pounds frequently; sit six hours in an eight-hour workday; stand and/or walk six hours in an eight-hour workday; occasionally balance, kneel, crouch and crawl; and occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds."  *Id.*

At step four, the ALJ relied on the VE's testimony and found the plaintiff was able to perform past relevant work as a "car salesman."  Tr. 21.  The ALJ also completed an additional step five inquiry and in reliance on the VE's testimony, found that given the plaintiff's age (43), high school education (GED), work experience, and RFC, there are other jobs that exist in the national economy that the plaintiff can perform including: "Customer Service Representative," "Mailroom Clerk," and "Retail Sales Clerk."  Tr. 30.  Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act since March 29, 2013.  Tr. 31.

## II.     Analysis

Plaintiff argues that the ALJ erred in assessing the intensity, persistence, and limiting effects of his symptoms and improperly relied on her own lay opinion to determine the plaintiff's RFC.  Dkt. No. 10, at 11, 16.  The Commissioner contends that

---

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  20 C.F.R. § 416.967(b).

the ALJ properly evaluated plaintiff's alleged symptoms and that the RFC is supported by substantial evidence. Dkt. No. 13, at 20, 24.

### A. The ALJ properly assessed the intensity, persistence, and limiting effects of the plaintiff's symptoms.

The Second Circuit has long held that it is the function of the Commissioner, not the courts, to appraise the credibility of witnesses, including the plaintiff. *Campbell v. Astrue*, No. 11-CV-854, 2012 WL 29321 at *2 (2d Cir. 2012) (internal quotations and citation omitted). The ALJ is required to evaluate the plaintiff's subjective complaints through a two-step process. *See generally* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must decide whether the plaintiff suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(b), 416.929(b). If so, then the ALJ must assess the intensity, persistence, and limiting effects of the plaintiff's symptoms and based on all of the evidence in the case record, determine the extent to which they limit the plaintiff's functioning. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

Because an individual's symptoms can sometimes suggest a greater level of severity of impairments than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve

6

symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. 404.1529(c)(3), 416.929(c)(3); SSR 16-3P (2)(d), 2017 WL 5180304 at *7-8 (S.S.A.). A plaintiff's allegations of pain and functional limitations are "entitled to great weight where … supported by objective medical evidence." *Rockwood v. Astrue*, 614 F.Supp.2d 252, 270 (N.D.N.Y. 2009) (citation omitted). However, the ALJ is not required to credit a claimant's testimony concerning his or her limitations and symptoms; rather, the ALJ has discretion to assess the claimant's symptoms in light of the evidence in the record. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2012) (internal citation omitted).

As the ALJ initially observed in her decision, the plaintiff did not complete a function report documenting the nature and extent of the functional limitations caused by the disorders he listed on his application for SSI. Tr. 25. Accordingly, the ALJ extensively considered the plaintiff's testimony. For example, the plaintiff testified that he can only walk for 20 minutes and stand for 20 minutes; requires stretching when sitting; suffers pain from sitting too long and throbbing in the leg if he does too much; experiences back pain when bending over; when walking experiences numbness and trips; and feels worse when the weather changes. *Id.* The ALJ also noted that the plaintiff said he was able to manage his personal care, could go grocery shopping, and felt his condition was better than in 2013, because he was on crutches in 2013. *Id.*

Here, the ALJ found the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but the plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms

7

were not entirely consistent with the record.  Tr. 25.  Specifically, the ALJ noted that: (1) the objective clinical evidence does not fully support the allegations of disabling symptoms and limitations; (2) the conservative nature and extent of medication and other treatment is inconsistent with disabling pain and other symptoms; (3) the lack of treatment between January 2014 and July 2015,[4] which ended only after notice of the September 2015 hearing was sent, is inconsistent with plaintiff's allegations of disabling intensity, persistence and limiting effects; and (4) results of imaging studies do not support the plaintiff's allegations of low back pain radiating into his right knee and thigh.  Tr. 27.

Plaintiff argues that the ALJ erred in her assessment by failing to explicitly consider the regulatory factors and mischaracterized the plaintiff's treatment as conservative.  Dkt. No. 10 at 11-16.  This argument is unavailing.  First, the fact that the ALJ did not specifically reference each specific factor in the decision "does not undermine the assessment, given the substantial evidence supporting the ALJ's decision."  *Wavercak v. Astrue*, 420 F. App'x 91,94 (2d Cir. 2011).  The ALJ reasonably relied on contrary evidence in the record, including extensive testimony and treatment notes in support of her decision.

Contrary to the plaintiff's assertion, the ALJ did not err in noting that the plaintiff's treatment was conservative.  "A conservative pattern of treatment is an

---

[4] Aside from an x-ray of the plaintiff's right femur, performed in April 2014, showing the healed fractures and hardware, there are no treatment records from January 2014 through July 2015. Tr. 27 (referring to Exhibit 14F, page 14).

appropriate factor to consider in assessing credibility." *Robinson v. Commissioner of Social Security*, No. 1:16-CV-00648 MAT, 2018 WL 3583236, at *5 (W.D.N.Y. July 26, 2018). Here, the ALJ noted the plaintiff's testimony that he discontinued pain management treatment with Guatam Arora, M.D., ("Dr. Arora") a couple of years before the hearing because he did not like the medications he was prescribed (Lortab, Gabapentin, etc.), and he did not use his cane to walk and was only taking Ibuprofen and over-the-counter medications at the time of the hearing. Tr. 25. The ALJ also observed that although the plaintiff did pursue some physical therapy until January 2014, he stopped seeking medical treatment for over a year-and-a-half from January 2014 until July 2015 when he was examined by Luisa Rojas, M.D. ("Dr. Rojas") of DENT neurology for leg pain and numbness. Tr. 28. The ALJ observed that the plaintiff sought treatment again soon after the plaintiff received notice of the impending administrative hearing for this matter. Tr. 28.

Here, the plaintiff also contends the ALJ mischaracterized his treatment as "conservative" where the ALJ should have considered that he underwent multiple surgeries to address his gunshot wound and pain management treatment until he stopped taking his prescription pain medications due to excessive drowsiness and addiction concerns. Dkt. No. 10 at 15. However, the ALJ did consider both of the plaintiff's surgeries in her decision. She noted that the plaintiff was admitted to Erie County Medical Center ("ECMC") on July 15, 2012 for two gunshot wounds to the right leg with an associated fracture and underwent a popliteal artery bypass with a graft using a vein from his left leg. Tr. 26 (referencing Exhibit 6F, p. 4). The second surgery was performed on July 27, 2012, to remove a softball size hematoma from the left thigh

9

where the vein had been harvested.  Tr. 26 (referencing Exhibit 6F, p. 9).  The ALJ annotated the plaintiff's medical evidence subsequent to the 2012 surgeries, noting continued improvement and normal gait observed by the plaintiff's treatment providers throughout the relevant time period and found that the clinical evidence did not fully support the plaintiff's allegations of disabling symptoms and limitations.

The ALJ articulated adequate reasoning for her credibility determination, which is supported by substantial evidence in the record. It is not the function of this Court but rather the Commissioner to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the plaintiff.  *Stanton v. Astrue*, 370 F.App'x. 231, 234 (2d Cir. 2010); *see also, Hargrave v. Colvin*, No. 12-CV-6308 (MAT), 2014 WL 3572427, at *5 (W.D.N.Y. July 21, 2014) ("Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, [her] decision to discredit subjective testimony is entitled to deference and may not be disturbed on review if it is supported by substantial evidence.").  Even if the ALJ did not explicitly cite each of the factors in her credibility analysis, such an omission does not require remand where the credibility assessment is supported by substantial evidence.  See *Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."). Accordingly, this Court finds that the ALJ did not err in her assessment of the intensity, persistence, and limiting effects of the plaintiff's symptoms.

10

### B. The ALJ properly assessed the plaintiff's RFC

An ALJ's decision regarding the claimant's RFC must afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). In deciding a disability claim, the ALJ is entitled to weigh all of the evidence available to make an RFC finding consistent with the record as a whole. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Further, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F.3d at 149; *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

When determining how much weight a medical opinion should receive, the ALJ must consider: (1) whether the source of the medical opinion examined the claimant; (2) the length, frequency, nature and extent of the treatment relationship; (3) the quantity and quality of relevant evidence provided in support of the medical opinion; (4) whether the medical opinion is consistent with the record as a whole; (5) whether the medical source is a specialist offering an opinion related to his/her area of specialty; and (6) other relevant factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c).

Plaintiff challenges the ALJ's RFC finding regarding his physical limitations. Dkt. No. 10, pp. 18-20. Specifically, the plaintiff contends that the ALJ erred by relying exclusively on her own lay opinion in determining that the plaintiff was capable performing a "less than full range of light work," because there is no medical evidence to support the finding that he is capable of "standing and walking six hours per workday." Dkt. No. 10, at 18. This Court disagrees where the ALJ explained that she accorded "great weight" to the medical opinion of consultative examiner, Donna Miller, D.O. ("Dr. Miller"), "some weight" to the medical opinion of plaintiff's treating physician, Christopher Ritter, M.D. ("Dr. Ritter"), and the RFC determination is not inconsistent with the plaintiff's medical record evidence.

The only medical opinion addressing the plaintiff's physical functional abilities or limitations is from consultative examiner Dr. Miller who examined the plaintiff on September 23, 2013, just over a year after his gun-shot wound injury, at the request of the SSA's Disability Determination Service ("DDS"). Tr. 263. Dr. Miller diagnosed the plaintiff with "chronic lower right extremity pain" and "history of gunshot wound, status post-surgery." Tr. 263. The ALJ noted that upon examination with Dr. Miller the plaintiff reported leg pain 10/10. Tr. 27 (referencing Exhibit 8F). However, Dr. Miller observed the plaintiff's normal gait; 5/5 strength in his lower extremities; reduced flexion/extension of the right knee; although he had a cane, he did not reach for it and stated he used it "as needed;" he required no help getting on or off the exam table; and could squat 75 percent of normal. *Id.* Dr. Miller opined that the plaintiff "has a mild restriction for repetitive kneeling and squatting." Tr. 263. The ALJ accorded "great weight" to Dr. Miller's opinion because it was based on an in-person examination of the

plaintiff, and was consistent with the record as a whole, including the objective medical evidence and the claimant's reported activities of daily living. Tr. 29. Nothing in Dr. Miller's opinion precludes the plaintiff from performing a reduced range of light work.

Although the record lacks a physical functionality assessment from any of the plaintiff's treating sources, the ALJ accorded "some weight" to the opinion of one of the plaintiff's treatment providers, Dr. Ritter, that the plaintiff was totally disabled from July 15, 2012 throughout March 1, 2013 (estimate). Tr. 26 (referencing Exhibit 1F). On an insurance form dated November 16, 2012, the plaintiff attested that he was totally disabled because he "can't walk/on crutches" and estimated that he would be capable of working again on March 1, 2013. Tr. 195. Dr. Ritter signed the bottom of the form, explaining that the plaintiff was unable to work due to right leg pain secondary to right leg injury from July 15, 2012. *Id.* The ALJ gave "some weight" to Dr. Ritter's opinion where she determined that the recuperation period seemed reasonable given the gunshot wounds and surgeries. *Id.* The ALJ explained that she did not accord "great weight" to the opinion because Dr. Ritter failed to support his opinion with any treatment records or explanation, did not state any functional limitations, and addressed the issue of disability which is reserved to the Commissioner. *Id.* Although treating physicians may share their opinions concerning a patient's inability to work, the ultimate decision of whether an individual is disabled is "reserved for the Commissioner," therefore, the ALJ is not required to give controlling weight to conclusory statements about whether or not a claimant is disabled. 20 C.F.R § 404.1527(d)(1); *see also Donnelly v. Barnhart*, 1-5 Fed. App'x 306, 308 (2d Cir. 2004) (holding that the ALJ "properly discounted" portions

of doctors' opinions which made conclusory statements as to whether plaintiff was disabled).

Here, the plaintiff argues that two of the plaintiff's treating sources have indicated that the plaintiff is totally disabled and the ALJ erred by omitting the opinion of physician's assistant, Jessie Donaldson ("PA Donaldson") in determining the plaintiff's RFC. Dkt. No. 10, at 18-19. On January 29, 2013, PA Donaldson wrote a note on prescription pad paper stating that the plaintiff was disabled from July 15, 2012 through January 29, 2013, due to sensory neuropathy subsequent to gunshot injuries he sustained to his leg. Tr. 251. PA Donaldson is a physician's assistant, not a medical doctor, therefore he is not an "acceptable medical source." 20 C.F.R. § 404.1513(a). Nonetheless, although PA Donaldson is not technically an "acceptable medical source," the regulations suggest that opinions from other medical sources, such as physician's assistants, are important and should be evaluated on key medical issues such as impairment severity and functional effects, along with other relevant evidence in the file. SSR 06-03P, 2006 WL 2329939, at *2 (SSA Aug. 8, 2006). However, because PA' Donaldson's opinion only addresses disability, an issue reserved to the Commissioner, and only concerns a limited six-month period following the plaintiff's gun-shot wound (the same period addressed by Dr. Ritter's opinion), this Court finds that the ALJ's failure to address the opinion is harmless error. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (finding harmless error where the ALJ's consideration of a doctor's report would not have changed the ALJ's adverse determination).

This Court finds the ALJ did not rely solely on her own lay opinion in determining the plaintiff's physical limitations in the RFC where she explained that she relied on Dr. Miller's opinion and Dr. Ritter's opinions, the latter in part, and the RFC is not inconsistent with the plaintiff's medical evidence.  An ALJ may accept parts of a doctor's opinion and reject others.  *Veino*, 312 F.3d 578 at 588-89; see also 20 C.F.R 404.1527(d)(2), 416.927 (d)(2) ("Although we consider opinions from medical sources on issues such as … your residual functional capacity … the final responsibility for deciding these issues is reserved to the Commissioner.").

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is GRANTED and Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is DENIED.  The Clerk of the Court is directed to close this case.

DATED:	Buffalo, New York
	April 25, 2019

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**
